UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARRYL ROBINSON,

                              Plaintiff,

     -vs-                        **No. 1:16-CV-00835 (MAT)**
                                      **DECISION AND ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

## I. Introduction

Represented by counsel, plaintiff Darryl Robinson ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## II. Procedural History

Plaintiff protectively filed an application for SSI on October 2, 2012, alleging disability as of February 11, 1986 due to a learning disability. Administrative Transcript ("T.") 102. Plaintiff's application was initially denied. T. 114. At Plaintiff's request, a hearing was held before administrative law

judge ("ALJ") Eric L. Glazer on June 18, 2014. T. 89-100. The ALJ adjourned the hearing to permit Plaintiff an opportunity to obtain representation. *Id*. A second hearing was held on October 21, 2014, at which Plaintiff appeared with counsel. T. 35-88. At the hearing, Plaintiff amended his alleged onset date to October 2, 2012. T. 38.

On February 25, 2015, the ALJ issued an unfavorable decision. T. 14-34. The Appeals Council denied Plaintiff's request for review on August 16, 2016, rendering the ALJ's determination the final decision of the Commissioner. T. 1-5. This action followed.

**III. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 2, 2012, the date of his application. T. 19.

At step two, the ALJ found that Plaintiff suffered from the severe impairments of diabetes, learning disorder, mild mental retardation, and substance abuse disorder. *Id*. The ALJ further found Plaintiff's low back pain, hypertension, and anxiety disorder to be non-severe. T. 19-20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

2

equaled the severity of any listed impairment. T. 26. The ALJ particularly considered sections 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00 of the listings in reaching this conclusion. T. 20-23.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to: lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand or walk for six hours in an eight-hour workday; push and pull 20 pounds occasionally and 10 pounds frequently; frequently lift overhead and lift in all other directions with the upper extremities; frequently climb ramps and stairs and occasionally climb ladders and scaffolds; hear and understand simple oral instructions and communicate simple information; perform simple, routine, repetitive tasks with no more than simple oral instructions; communicate simple information necessary to convey work particulars, messages, and compliance requirements; make simple work related decisions; have superficial contact with supervisors, coworkers, or the public, with such contact being adequate for the accomplishment of assigned tasks; respond appropriately to coworkers and the public; and perform no handling, sale, or preparation of alcoholic beverages or controlled pharmacological substances. T. 23. The ALJ expressly found that normal work breaks would accommodate any time that Plaintiff would be off task. *Id*.

At step four, the ALJ found that Plaintiff had no past relevant work. T. 27. At step five, the ALJ relied on the testimony and written submissions of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of bakery worker-conveyor line, housekeeper, and laundry sorter. T. 29-30. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. T. 30.

## IV. Discussion

### A. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the

4

[Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff argues that the Commissioner's final determination should be reversed or, in the alternative, remanded for further administrative proceedings because (1) the ALJ failed to properly incorporate his own findings into his RFC assessment, and (2) the ALJ improperly substituted his own lay opinion for competent medical opinion in considering Plaintiff's IQ scores. For the reasons discussed below, the Court finds these arguments without merit.

### B. The ALJ's RFC Assessment

Plaintiff's first argument is that the ALJ failed to incorporate all of his own findings into his RFC assessment. In particular, Plaintiff contends that the ALJ determined at step two of the sequential analysis that Plaintiff had moderate limitations in concentration, persistence, and pace, but that his RFC assessment failed to take this finding into account.

Plaintiff's argument lacks merit. The Second Circuit has rejected the argument that an ALJ's RFC assessment must "explicitly include [a claimant's] non-exertional functional limitations." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). Instead, RFC findings "need only afford[ ] an adequate basis for meaningful

5

judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]" *Id.* (internal quotation omitted and alterations in original). As such, an ALJ is not required to explicitly incorporate a step two finding regarding concentration, persistence, or pace into his RFC assessment where he otherwise accounts for those limitations. *See, e.g., Rodriguez v. Colvin*, No. 13-CV-6360 CJS, 2014 WL 3882191, at *17 (W.D.N.Y. Aug. 7, 2014) (finding that the "ALJ's decision not to include specific limitations for attention and concentration in the RFC" did not require reversal because an RFC finding limiting claimant to work requiring simple instructions and decisions was "sufficient to account for [claimant's] limitations in attention and concentration"); *Crawford v. Astrue*, No. 13-CV-6068P, 2014 WL 4829544, at *23 (W.D.N.Y. Sept. 29, 2014) (finding ALJ adequately incorporated moderate limitations in mental functioning into RFC by "restricting [claimant] to jobs that require an individual to understand, remember and carry out simple instructions").

In this case, the ALJ's RFC assessment properly incorporated Plaintiff's moderate limitations in concentration, persistence, or pace by limiting Plaintiff to simple, routine, repetitive tasks, as well as to understanding only simple instructions and communicating only simple information. T. 23. The ALJ's RFC assessment was consistent with the medical evidence of record. Consultative psychiatric examiner Dr. Susan Santarpia examined Plaintiff on

February 29, 2013 and expressly opined that Plaintiff was capable of understanding simple directions and instructions and performing simple tasks independently. T. 286. Dr. Santarpia further opined that Plaintiff was capable of maintaining attention and concentration. *Id*. Similarly, psychiatrist Dr. Gary Cohen evaluated Plaintiff on May 15, 2013, and observed that Plaintiff's orientation was normal, his concentration was good, and his memory was intact. T. 304. Dr. Cohen estimated that Plaintiff had an average IQ and opined that Plaintiff did not have "any psychiatric conditions that need to be worked on." *Id*. The ALJ's RFC assessment (and the hypothetical questions he posed to the VE) were consistent with this medical evidence and adequately accounted for Plaintiff's limitations in concentration, persistence, and pace. *See Peryea v. Comm'r of Soc. Sec.*, No. 5:13-CV-0173 GTS/TWD, 2014 WL 4105296, at *10 (N.D.N.Y. Aug. 20, 2014) (finding no error in ALJ's decision not explicitly include a moderate limitation in concentration, persistence or pace in RFC assessment where consultative physician opined that claimant was capable of simple work).

For the reasons discussed above, the Court finds no error in the ALJ's RFC assessment, which adequately accounted for Plaintiff's moderate limitations in concentration, persistence, or pace. As such, the Court finds no basis for reversal or remand of the ALJ's decision.

## C. Consideration of Plaintiff's IQ Scores

Plaintiff's second and final argument is that the ALJ relied on his own lay opinion, and not competent medical opinion, in considering Plaintiff's IQ scores. In particular, Plaintiff takes issue with the ALJ's observation at the hearing that there was a variance in Plaintiff's scores on the different components of the IQ test, as well as a discrepancy between Plaintiff's older and newer IQ scores. T. 41. The ALJ commented that the IQ discrepancies "make[] for an interesting case" that he would have to "consider . . . very carefully . . . with help." T. 41. Plaintiff maintains that these statements indicate that the ALJ relied on his own lay interpretation of Plaintiff's IQ scores in making his RFC assessment.

Plaintiff's argument is unsupported by the record. The ALJ's decision makes it clear that he relied on Dr. Santarpia's opinion in considering the impact of Plaintiff's IQ score on his ability to perform work-related functions. *See* T. 28.

Dr. Santarpia performed intelligence testing on Plaintiff on February 19, 2013. Plaintiff showed a full scale IQ of 67, but exhibited significant variance within the subtests, with comparatively high perceptual reasoning and verbal comprehension scores of 81 and 72, respectively. T. 286. Dr. Santarpia stated that, because of this discrepancy, Plaintiff's full scale score "should be considered with caution." *Id*. Dr. Santarpia further explained that certain aspects of the testing might have been negatively impacted by Plaintiff's limited education. *Id*.

8

Dr. Santarpioa went on to opine that Plaintiff's "cognitive inefficiencies" were "not significant enough to interfere with [his] ability to function on a daily basis." T. 287. She specifically stated that Plaintiff could understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. T. 286-87. The ALJ specifically relied upon Dr. Santarpia's opinion, which he afforded great weight, in considering what functional limitations resulted from Plaintiff's cognitive difficulties. T. 28. The ALJ further noted that limitations assessed by Dr. Santarpia were consistent with the ALJ's RFC assessment.

Accordingly, the record shows that the ALJ did not rely on his own lay opinion in considering Plaintiff's cognitive abilities (as evidenced by his IQ score), but instead properly relied on the competent medical opinion of Dr. Santarpia. It is well-established that "the opinion of a consultative examiner can constitute substantial evidence supporting an ALJ's decision." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (internal quotation omitted). As such, the Court finds no basis for reversal or remand in the ALJ's consideration of Plaintiff's IQ scores.

V. **Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied. The Commissioner's motion

for judgment on the pleadings (Docket No. 10) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              **s/Michael A. Telesca**

                                     HON. MICHAEL A. TELESCA
                                     United States District Judge

Dated:    July 11, 2018
            Rochester, New York.

10